IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| EARNEST BARNARD CLAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 325-009 |
| | ) | |
| VERONICA STEWART, Deputy Warden of | ) | |
| Security; JERMAINE WHITE, Field Director | ) | |
| or Regional Director; BRIAN P. KEMP, | ) | |
| Governor of Georgia; JIMMY KELLOM, | ) | |
| Captain or Unit Manager; ANDREW | ) | |
| MCFARLANE, Warden; GARRETT, | ) | |
| Corrections Officer; JACKSON, Deputy | ) | |
| Warden of Security; RICKY WILCOX, | ) | |
| Deputy Warden of Security; and TYRONE | ) | |
| OLIVER, Georgia Department of Corrections | ) | |
| Commissioner, | ) | |
| | ) | |
| Defendants.[1] | ) | |

**O R D E R**

Plaintiff, incarcerated at Telfair State Prison in Helena, Georgia, has submitted to the Court for filing a complaint brought pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's second amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785

---

[1] The Court **DIRECTS** the **CLERK** to update the spelling of Defendant Jimmy Kellom's name, as well as Defendants' titles on the docket, in accordance with the above caption, which is consistent with Plaintiff's second amended complaint. (Doc. no. 7, pp. 1-4.)

(11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.     BACKGROUND**

In his second amended complaint, Plaintiff names as Defendants:  (1) Deputy Warden of Security Veronica Stewart, (2) Field Director or Regional Director Jermaine White, (3) Governor Brian P. Kemp, (4) Captain or Unit Manager Jimmy Kellom, (5) Warden Andrew McFarlane, (6) Corrections Officer Garrett, (7) Deputy Warden of Security Jackson, (8) Deputy Warden of Security Ricky Wilcox, and (9) Georgia Department of Corrections Commissioner Tyrone Oliver.  (Doc. no. 7, pp. 1-4.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On April 15, 2024, Plaintiff filed grievances with several intake counselors at Telfair State Prison to complain about the ways in which the prison was being run.  (Id. at 12.)  Shortly after Plaintiff filed the grievances, on April 16, Defendant Kellom used excessive force against Plaintiff in retaliation for filing the grievances by shocking Plaintiff repeatedly with a "stun gun," also called an electric taser.  (Id. at 12, 13.)  After he finished shocking Plaintiff with the taser, Defendant Kellom stated aloud to Plaintiff, "we are going to make your life hell at Telfair State Prison, motherfucker, since you just filed [] grievances against me and my co-workers about how we are running Telfair State Prison . . . ."  (Id. at 14.)  Then, Defendant Kellom sprayed Plaintiff "repeatedly in the face with some kind [] of pepper and/or cupstun and/or chemical spray" out of view of the surveillance cameras.  (Id.)  As a result of being shocked, Plaintiff urinated on himself and became unconscious.  (Id. at 12.)

Defendants Jackson, Kemp, Wilcox, Stewart, McFarlane, Oliver, "and other(s)" directed Defendant Kellom to shock Plaintiff repeatedly as retaliation for the grievances.  (Id.

2

at 13.) They also directed Defendant Kellom to spray Plaintiff with the chemical spray as retaliation. (Id. at 14.) Plaintiff does not give any context for his belief these Defendants directed Defendant Kellom to do these things. (See generally id. at 11-17.)

Plaintiff suffered physical injuries to his nervous system and experiences high blood pressure as a result of being tased. (Id. at 12.) From the chemical spray, Plaintiff experienced high blood pressure, severe skin burning, rashes, blindness in his eyes, and burning in his lungs. (Id. at 14.)

On a date shortly after April 16, all nine Defendants "brought false misconduct reports" against Plaintiff in retaliation for the grievances and April 16 excessive force incident. (Id. at 15.) Defendants made these reports in writing and on video and placed them in the Telfair State Prison files. (Id.) Plaintiff does not attach the false reports or provide any detail concerning the allegations in these reports or why they are false. Moreover, from April 16 to June or July 2024, Defendants continued to retaliate against Plaintiff by housing him in administrative segregation for several months. (Id. at 16.) Plaintiff does not explain the context of his transfer to segregation or how each Defendant participated in the conspiracy to transfer him there. In segregation, Plaintiff's cell contained feces, cockroaches, rodents, and residual pepper or chemical spray. (Id.) During this period, Defendants denied Plaintiff a hearing, notice, periodic reviews, or any other form of due process. (Id.) Plaintiff again provides no context or factual detail about each specific Defendant's involvement. Defendant Kellom also periodically visited Plaintiff in administrative segregation to spray him with the pepper or chemical spray again. (Id.)

While in administrative segregation, Plaintiff continued to file grievances against Defendants. (Id. at 16-17.) Then, upon release from segregation, Defendants made Plaintiff

3

live in "one of the most dangerous dorms in General Population" as punishment for the grievances until about August 9, 2024. (Id. at 16, 17.) While living in this dorm, Plaintiff was assaulted by several inmates. (Id. at 17.) Plaintiff was not supposed to have been housed in general population due to safety concerns, as other gang member inmates want to harm Plaintiff. (Id.) Plaintiff fails again to provide context or detail.

On August 9, 2024, Plaintiff was placed back in administrative segregation because he reported the assaults and because he continues to be punished with false disciplinary reports. (Id.) He has been housed in administrative confinement up through the time he filed the operative second amended complaint. (Id.) In this placement, other inmates continue to assault Plaintiff, and Defendant Kellom continues to spray Plaintiff. (Id.) On January 31, 2025, Plaintiff was attacked by another inmate at the direction of Defendants after Plaintiff filed more grievances. (Id.) Plaintiff does not explain the basis for his belief Defendants instigated the attack.

Ultimately, since April 16, 2024, all nine Defendants have "continued to subject Plaintiff [] to [a] series ("campaign") of harassment and retaliation" based on Plaintiff's grievances. (Id.) For relief, Plaintiff seeks declaratory, monetary, and equitable relief. (Id. at 13, 14, 17.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has arguably stated viable an excessive force claim against Defendant Kellom for the April 16, 2024 incident. See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The Court also finds Plaintiff arguably states a viable retaliation claim against Defendant Kellom for the April 16, 2024 incident. See Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).

4

Accordingly, process shall issue against Defendant Kellom. In a companion Report and Recommendation, the Court recommends dismissal of Defendants Stewart, White, Kemp, McFarlane, Garrett, Jackson, Wilcox, and Oliver, as well as Plaintiff's official capacity claims against Defendant Kemp for monetary damages. The Court also recommends dismissal of Plaintiff's claims against Defendant Kellom arising after the April 16, 2024 incident.

## II.   INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendant Kellom. The United States Marshal shall mail a copy of the second amended complaint, (doc. no. 7), and this Order by first-class mail and request that Defendant Kellom waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate Defendant to effect service.

**IT IS FURTHER ORDERED** Plaintiff shall serve upon the defendant, or upon their defense attorney(s) if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendant or their counsel. Fed. R. Civ. P. 5; Loc. R. 5.1. Every pleading shall contain a caption setting forth

the name of the court, the title of the action, and the file number.  Fed. R. Civ. P. 10(a).  Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by defendant.  Upon being given at least five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action.  Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.  Defendant shall ensure Plaintiff's deposition and any other depositions in the case are taken <u>within the 140-day discovery period</u> allowed by this Court's Local Rules.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Loc. R. 41.1.  If Plaintiff wishes to obtain facts and information about the case from the defendant, Plaintiff must initiate discovery.  <u>See generally</u> Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery).  Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants.  <u>See</u> Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions.  <u>Id.</u>  Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party.  Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response,

and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve their response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that

there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

**While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.**

SO ORDERED this 7th day of May, 2025, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA