IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| EARNEST BARNARD CLAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 325-009 |
| | ) | |
| VERONICA STEWART, Deputy Warden of | ) | |
| Security; JERMAINE WHITE, Field Director | ) | |
| or Regional Director; BRIAN P. KEMP, | ) | |
| Governor of Georgia; JIMMY KELLOM, | ) | |
| Captain or Unit Manager; ANDREW | ) | |
| MCFARLANE, Warden; GARRETT, | ) | |
| Corrections Officer; JACKSON, Deputy | ) | |
| Warden of Security; RICKY WILCOX, | ) | |
| Deputy Warden of Security; and TYRONE | ) | |
| OLIVER, Georgia Department of Corrections | ) | |
| Commissioner, | ) | |
| | ) | |
| Defendants.[1] | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Telfair State Prison in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983.  He is proceeding *pro se* and *in forma pauperis* ("IFP").  Because he is proceeding IFP, Plaintiff's second amended complaint must be screened to protect potential defendants.  Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

---

[1] The Court **DIRECTS** the **CLERK** to update the spelling of Defendant Jimmy Kellom's name, as well as Defendants' titles on the docket, in accordance with the above caption, which is consistent with Plaintiff's second amended complaint.  (Doc. no. 7, pp. 1-4.)

I.      SCREENING THE SECOND AMENDED COMPLAINT

   A.      BACKGROUND

In his second amended complaint, Plaintiff names as Defendants: (1) Deputy Warden of Security Veronica Stewart, (2) Field Director or Regional Director Jermaine White, (3) Governor Brian P. Kemp, (4) Captain or Unit Manager Jimmy Kellom, (5) Warden Andrew McFarlane, (6) Corrections Officer Garrett, (7) Deputy Warden of Security Jackson, (8) Deputy Warden of Security Ricky Wilcox, and (9) Georgia Department of Corrections Commissioner Tyrone Oliver. (Doc. no. 7, pp. 1-4.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On April 15, 2024, Plaintiff filed grievances with several intake counselors at Telfair State Prison to complain about the ways in which the prison was being run. (Id. at 12.) Shortly after Plaintiff filed the grievances, on April 16, Defendant Kellom used excessive force against Plaintiff in retaliation for filing the grievances by shocking Plaintiff repeatedly with a "stun gun," also called an electric taser. (Id. at 12, 13.) After he finished shocking Plaintiff with the taser, Defendant Kellom stated aloud to Plaintiff, "we are going to make your life hell at Telfair State Prison, motherfucker, since you just filed [] grievances against me and my co-workers about how we are running Telfair State Prison . . . ." (Id. at 14.) Then, Defendant Kellom sprayed Plaintiff "repeatedly in the face with some kind [] of pepper and/or cupstun and/or chemical spray" out of view of the surveillance cameras. (Id.) As a result of being shocked, Plaintiff urinated on himself and became unconscious. (Id. at 12.)

Defendants Jackson, Kemp, Wilcox, Stewart, McFarlane, Oliver, "and other(s)" directed Defendant Kellom to shock Plaintiff repeatedly as retaliation for the grievances. (Id. at 13.) They also directed Defendant Kellom to spray Plaintiff with the chemical spray as

2

retaliation. (Id. at 14.) Plaintiff does not give any context for his belief these Defendants directed Defendant Kellom to do these things. (See generally id. at 11-17.)

Plaintiff suffered physical injuries to his nervous system and experiences high blood pressure as a result of being tased. (Id. at 12.) From the chemical spray, Plaintiff experienced high blood pressure, severe skin burning, rashes, blindness in his eyes, and burning in his lungs. (Id. at 14.)

On a date shortly after April 16, all nine Defendants "brought false misconduct reports" against Plaintiff in retaliation for the grievances and April 16 excessive force incident. (Id. at 15.) Defendants made these reports in writing and on video and placed them in the Telfair State Prison files. (Id.) Plaintiff does not attach the false reports or provide any detail concerning the allegations in these reports or why they are false. Moreover, from April 16 to June or July 2024, Defendants continued to retaliate against Plaintiff by housing him in administrative segregation for several months. (Id. at 16.) Plaintiff does not explain the context of his transfer to segregation or how each Defendant participated in the conspiracy to transfer him there. In segregation, Plaintiff's cell contained feces, cockroaches, rodents, and residual pepper or chemical spray. (Id.) During this period, Defendants denied Plaintiff a hearing, notice, periodic reviews, or any other form of due process. (Id.) Plaintiff again provides no context or factual detail about each specific Defendant's involvement. Defendant Kellom also periodically visited Plaintiff in administrative segregation to spray him with the pepper or chemical spray again. (Id.)

While in administrative segregation, Plaintiff continued to file grievances against Defendants. (Id. at 16-17.) Then, upon release from segregation, Defendants made Plaintiff live in "one of the most dangerous dorms in General Population" as punishment for the

3

grievances until about August 9, 2024. (Id. at 16, 17.) While living in this dorm, Plaintiff was assaulted by several inmates. (Id. at 17.) Plaintiff was not supposed to have been housed in general population due to safety concerns, as other gang member inmates want to harm Plaintiff. (Id.) Plaintiff fails again to provide context or detail.

On August 9, 2024, Plaintiff was placed back in administrative segregation because he reported the assaults and because he continues to be punished with false disciplinary reports. (Id.) He has been housed in administrative confinement up through the time he filed the operative second amended complaint. (Id.) In this placement, other inmates continue to assault Plaintiff, and Defendant Kellom continues to spray Plaintiff. (Id.) On January 31, 2025, Plaintiff was attacked by another inmate at the direction of Defendants after Plaintiff filed more grievances. (Id.) Plaintiff does not explain the basis for his belief Defendants instigated the attack.

Ultimately, since April 16, 2024, all nine Defendants have "continued to subject Plaintiff [] to [a] series ("campaign") of harassment and retaliation" based on Plaintiff's grievances. (Id.) For relief, Plaintiff seeks declaratory, monetary, and equitable relief. (Id. at 13, 14, 17.)

**B.    DISCUSSION**

**1.    Legal Standard for Screening**

The second amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the

4

same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

**2.    With the Exception of Plaintiff's Retaliation Claim Against Defendant Kellom Arising from the April 16, 2024 Incident, Plaintiff Fails to State a Retaliation Claim Against Defendants**

With the exception of the retaliation claim stemming from the April 16, 2024 incident alleged against Defendant Kellom, which the Court addresses by simultaneously entered Order, Plaintiff fails to state a viable retaliation claim against any other Defendant.  To prevail on a retaliation claim, Plaintiff must establish that: "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (citation and quotation marks omitted). "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). However, "[t]o establish a retaliation claim under the First Amendment, a prisoner must show a causal connection between his protected speech and the harm of which he complains." Smith v. Villapando, 286 F. App'x 682, 685 (11th Cir. 2008) (*per curiam*).  Additionally, a complaint must contain enough facts to state a claim of retaliation that is plausible on its face.  Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (citing Twombly, 550 U.S. at 554).

Here, except for the retaliation claim against Defendant Kellom, Plaintiff fails to allege sufficient facts to establish any of his other retaliation claims are plausible on their face. Rather, throughout his statement of claim, he merely lists out Defendants' names or generically alleges "Defendant(s)" retaliated against him without providing any further factual detail or support for his contentions.  (See, e.g., doc. no. 7, p. 15 ("[Defendants] Jackson, Wilcox, Kemp, Stewart,

6

McFarlane, Oliver, White, and other[s] ongoing [deliberately] indifference in retaliation for [Plaintiff] filing the grievances . . . ."); id. at 16 ("Defendant(s) and others [forced] . . . [Plaintiff] to live in one of the most dangerous dorms in general population . . . as punishment and in retaliation of the grievances [Plaintiff] filed . . . .").)  Thus, with the exception of the retaliation claim against Defendant Kellom for his conduct on April 16, 2024, Plaintiff's remaining retaliation claims against all nine Defendants fail to rise above a speculative level.  See Smith v. Florida Dep't of Corr., 375 F. App'x 905, 911 (11th Cir. 2010) (*per curiam*) (finding conclusory allegations of retaliatory motive insufficient to raise allegation of retaliation above speculative level) (citing Iqbal, 556 U.S. at 680).  Accordingly, these claims should be dismissed.

### 3. Plaintiff Fails to State a Due Process Claim Against All Nine Defendants

Plaintiff alleges all nine Defendants violated his due process rights when placing him in segregation without a hearing, notice, periodic review, or other due process.  (Doc. no. 7, pp. 16.)  To state a due process claim, Plaintiff must allege "(1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process."  Quintanilla v. Bryson, 730 F. App'x 738, 743 (11th Cir. 2018) (quoting Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).

Prisoners have "no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison."  Kramer v. Donald, 286 F. App'x 674, 676 (11th Cir. 2008); see also Meachum v. Fano, 427 U.S. 215, 223-24 (1976) (finding no liberty interest in transfer to less agreeable prison).  However, there are two instances in which a prisoner may claim a protected liberty interest has been violated by placement in punitive segregation:  the placement (1) "will inevitably affect the duration of his sentence"; or (2) "imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 486 (1995). As Plaintiff has not alleged placement in segregation has or will extend the length of his incarceration, the Court turns to the "atypical and significant hardship" prong.

"It is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Al-Amin, 165 F. App'x at 738-39 (citing Hewitt v. Helms, 459 U.S. 460, 468 (1983), *modified on other grounds*, Sandin, 515 U.S. at 481); see also Chandler v. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991) (stating Due Process Clause does not "create 'an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" (citation omitted)). Thus, the Court must consider whether a deprivation of in-prison benefits "impose[s] atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." Hill v. Sellars, No. 5:15-CV-453, 2016 WL 7972197, at *5 (M.D. Ga. Nov. 17, 2016) (citing Sandin, 515 U.S. at 484 and Wilkinson v. Austin, 545 U.S. 209, 223 (2005)), *adopted by* 2017 WL 343638 (M.D. Ga. Jan. 23, 2017). To meet this pleading requirement, Plaintiff "must state or allege facts that show an 'atypical and significant hardship.'" Gilyard v. McLaughlin, No. 5:14-CV-185, 2015 WL 1019910, at *7 (M.D. Ga. Mar. 9, 2015). Stated otherwise, for the Court to determine whether the state has created a protected liberty interest, Plaintiff must allege sufficient facts about the "ordinary incidents of prison life" and the conditions of confinement he experiences to state a plausible claim for relief. See Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013); Hill, 2016 WL 7972197, at *5.

Plaintiff fails to allege sufficient facts that show placement in administrative segregation "imposes atypical and significant hardship" compared to other inmates at Telfair State Prison placed in the general population. Although Plaintiff has described some poor conditions in

8

administrative segregation, Plaintiff fails to provide any facts to establish these conditions impose a significant and atypical hardship in comparison to the conditions in general population. Rather, the facts Plaintiff alleges about general population demonstrate Plaintiff experienced violence and physical assault by other inmates while in general population. (Doc. no. 7, pp. 16-17.) Furthermore, beyond his description of this violence, Plaintiff alleges no other facts about the conditions of general population, much less does he allege how these conditions differ from those in segregation in a significant way. Thus, because Plaintiff fails to establish his placement in segregation imposes a significant and atypical hardship on him, he fails to state a viable claim for a due process violation by any Defendant.

### 4. Plaintiff Fails to State a Conspiracy Claim Against All Nine Defendants

As a result of filing grievances, Plaintiff alleges all Defendants "and others" engaged in a campaign of harassment and retaliation against him. (Doc. no. 7, pp. 12-17.) The Court liberally construes these contentions as alleging a civil conspiracy claim under 42 U.S.C. § 1983. See Torres v. Miami-Dade Cnty., Fla., 734 F. App'x 688, 691 (11th Cir. 2018) (*per curiam*) (explaining a court "must sometimes look beyond the labels used in a *pro se* party's [motion] and focus on the content and substance of the allegations"). To state a viable conspiracy claim, Plaintiff must make more than vague and conclusory allegations. See Twombly, 550 U.S. at 556-57; Kearson v. S. Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985) (*per curiam*); see also Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. . . . It is not enough to simply aver in the complaint that a conspiracy existed." (citations omitted)); Phillips, 746 F.2d at 785 ("The naked assertion of a conspiracy between a state judge and

private defendants without supporting operative facts provides an insufficient state action nexus for a section 1983 action." (citation omitted)).  In addition to alleging Defendants acted under color of state law, Plaintiff must also plead:  (1) Defendants came to an understanding or agreement to deprive Plaintiff of a constitutional right, and (2) the result of the conspiracy was "an actual denial" of a constitutional right.  Weiland v. Palm Beach Cty. Sheriff's Off., 792 F.3d 1313, 1327 (11th Cir. 2015).

Plaintiff's second amended complaint fails to allege a valid § 1983 conspiracy claim against any Defendant because his allegations are vague and conclusory.  As described, throughout the second amended complaint, Plaintiff simply lists most or all of Defendants' names, sometimes also referencing "others," and then summarily concludes Defendants conspired against him in various ways. (See, e.g., doc. no. 7, p. 15 ("[Defendants] Jackson, Wilcox, Kemp, Stewart, McFarlane, Oliver, White, and other[s] ongoing [deliberately] indifference in retaliation for [Plaintiff] filing the grievances . . . ."); id. ("Defendants Jackson, Wilcox, Kemp, Stewart, McFarlane, Oliver, White, [] Garrett, and Kellom brought false misconduct reports against [Plaintiff] . . . .").)

Significantly, these conclusory allegations fail to establish Defendants reached an understanding or agreement to deprive him of a constitutional right based on any communications between any named Defendant.  See Bailey v. Bd. of Cnty. Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992) (explaining "the linchpin for conspiracy is agreement, which presupposes communication").  Thus, Plaintiff fails to allege the first element of a conspiracy claim.

Nor do the allegations rise above wild speculation and supposition.  Plaintiff does not offer any supporting facts or further explanation for his contention Telfair State Prison officials, Georgia

10

Department of Corrections officials, and the Governor of Georgia were sufficiently outraged by his grievances to continuously retaliate against him for months. Such allegations are insufficient "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555.

For the reasons described above, Plaintiff fails to state a conspiracy claim upon which relief can be granted against any Defendant.

> **5.    With the Exception of Excessive Force Claim Arising from the April 16, 2024 Incident, Plaintiff Fails to State a Claim Against Defendant Kellom for Excessive Force for Any Other Alleged Incident**

As described in the Court's simultaneously entered Order, Plaintiff sufficiently alleges concrete, specific factual detail about the April 16, 2024 use of force incident involving Defendant Kellom to sufficiently state claims for excessive force and retaliation against Defendant Kellom. (See doc. no. 7, pp. 12-14.) The Court thus allows excessive force and retaliation claims to proceed against Defendant Kellom for this specific incident *only*.

However, Plaintiff fails to state any other claim against Defendant Kellom for any other alleged excessive force incident. Although Plaintiff alleges Defendant Kellom sprayed him on other occasions after April 16, he fails to state an excessive force claim for any of these incidents because he does not allege sufficient detail to explain the circumstances surrounding these events. (See id. at 16-17.) The "core judicial inquiry" for excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Here, Plaintiff provides no information about the underlying circumstances for the other times in which Defendant Kellom sprayed him, such as whether he was resisting, whether Defendant Kellom used more force than necessary under the circumstances, or any other relevant inquiry. Rather, he generically alleges Defendant Kellom sprayed him without providing any other

11

factual detail. (Doc. no. 7, pp. 16-17.) Thus, Plaintiff's references to being sprayed by Defendant Kellom on other occasions fail to state a claim for excessive force because they are too vague and conclusory. See Rene v. Prock, No. 3:23-CV-127, 2023 WL 2527047, at *2 (M.D. Fla. Mar. 15, 2023) (dismissing excessive force claim where "[p]laintiff [did] not explain the circumstances of the incident at all"); White v. Pratt, No. 3:23-CV-24634, 2024 WL 994237, at *2 (N.D. Fla. Feb. 5, 2024) ("The bare-bones allegations that [defendant] 'slammed' [p]laintiff onto the floor, without any further description, is too vague and conclusory to state an excessive force claim."), *adopted by* 2024 WL 988426 (N.D. Fla. Mar. 7, 2024); Pierre v. Kolodzeij, No. 3:20-CV-4786, 2020 WL 3871491, at *7 (N.D. Fla. June 9, 2020) (dismissing excessive force claim where plaintiff "referenc[ed] an incident involving [defendants]" but "provide[d] no details concerning the use of force" such as "what occurred, why force was used, what force was used, or how it was excessive, or how he was injured"), *adopted by* 2020 WL 3871454 (N.D. Fla. July 8, 2020).

In sum, to the extent Plaintiff brings other excessive force claims against Defendant Kellom for his conduct after the April 16, 2024 incident, these claims fail to meet minimum pleading requirements for the above-described reasons and should be dismissed.

### 6. Plaintiff Fails to State a Claim for Official Capacity Monetary Damages

Plaintiff sues Defendant Kemp in his official capacity.[2] (Doc. no. 7, p. 4.) However, the Eleventh Amendment bars official capacity claims against state officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against Defendant Kemp for monetary relief fail as a matter of law and should

---

[2] Plaintiff sues all other Defendants in solely their individual capacities. (Doc. no. 7, pp. 2-4.)

be dismissed.

## II.   CONCLUSION

In sum, after a thorough review of Plaintiff's second amended complaint, the Court concludes he fails to state a claim against Defendants Stewart, White, Kemp, McFarlane, Garrett, Jackson, Wilcox, and Oliver for *any* alleged claim.  Furthermore, beyond his claims regarding the April 16, 2024 incident, Plaintiff fails to state any other claim against Defendant Kellom.

Accordingly, the Court **REPORTS** and **RECOMMENDS** Defendants Stewart, White, Kemp, McFarlane, Garrett, Jackson, Wilcox, and Oliver, as well as all official capacity claims for monetary damages against Defendant Kemp, be **DISMISSED** from this case for failure to state a claim upon which relief may be granted.  The Court further **REPORTS** and **RECOMMENDS** Plaintiff's claims against Defendant Kellom arising after April 16, 2024 be **DISMISSED** for failure to state a claim upon which relief may be granted.  By separate Order, the Court directs service of process on Defendant Kellom based upon Plaintiff's allegations of excessive force and retaliation for the April 16, 2024 incident *only*.

SO REPORTED and RECOMMENDED this 7th day of May, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA