IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| EARNEST BARNARD CLAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 325-009 |
| | ) | |
| JIMMY KELLOM, Captain or Unit Manager, | ) | |
| | ) | |
| Defendant. | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Plaintiff filed a motion titled "Motion for an Order for Defendant Kellom [] to Provide [Plaintiff] Adequate Protect[ion], to Transfer Plaintiff [], to Provide the Court with the Entire Surveillance Camera ("Footage") for September 30, 2025, of Dorm E-1 at Telfair [sic] State Prison, and for Defendant Kellom to Provide Security ("and Surveillance") of [Plaintiff] at All Time[s] While at Telfair [sic] State Prison Booth and Building."[1] (Doc. no. 53.) The Court construes this motion as a request for a preliminary injunction. See Torres v. Miami-Dade Cnty., Fla., 734 F. App'x 688, 691 (11th Cir. 2018) (*per curiam*) (explaining a court "must sometimes look beyond the labels used in a *pro se* party's [motion] and focus on the content and substance of the allegations").

---

[1] Although titled as a motion to compel on the docket, the substance of the motion reveals it is a request for a preliminary injunction. (See doc. no. 53.) Plaintiff requests certain video footage, but this footage is connected to his requests for greater protection and a transfer. (See id.)

For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion be **DENIED**. (Doc. no. 53.)

I.  **BACKGROUND**

In his motion, Plaintiff describes a September 30, 2025 attack by another inmate named "J.J." while in administrative segregation at Telfair State Prison. (See generally id.) He explains several inmates escaped their assigned cells and came to Plaintiff's cell while wielding knives, poles, and other metal objects. (Id. at 1.) These inmates intended to kill Plaintiff, as directed by Defendant and others because of the above-captioned lawsuit. (Id.) During the confrontation, inmate J.J. stabbed Plaintiff repeatedly with a knife and metal pole. (Id. at 2.) After he finished attacking Plaintiff, J.J. stated, "this is a message from [Defendant] Kellom, motherfucker, he told me to tell you that . . . he was going to get your ass." (Id.)

Later that night, Sgt. Tucker visited Plaintiff's cell. (Id.) Plaintiff informed him about the attack and showed him his injuries, but Sgt. Tucker refused to get Plaintiff medical assistance. (Id.) Instead, Sgt. Tucker took out his taser, pointed it at Plaintiff, and told Plaintiff that he should not have filed this lawsuit. (Id.) The next morning, Plaintiff told Sgt. Brown, Chambers, Defendant Kellom, mental health counselors, and others about the attack, but they all refused to get Plaintiff medical assistance. (Id.) Finally, a doctor visited Plaintiff and observed Plaintiff's arm and wrist were swollen, and that Plaintiff had a series of stab wounds all over his body.[2] (Id.) The doctor then scheduled Plaintiff for an X-ray. (Id.)

---

[2] Plaintiff states a doctor visited him on August 9, 2025. (Doc. no. 53, p. 2.) However, this date does not match with Plaintiff's claim he was attacked on September 30, 2025, which is *after* August 9th. (Id. at 1.) Thus, the August 9th date appears to be a mistake because it would be impossible for the doctor to have assessed his injuries on a date before the attack purportedly occurred. Nonetheless, this discrepancy need not delay the Court because what matters is that Plaintiff describes receiving medical attention at some point after the attack. (Id. at 2.)

After the doctor attended to Plaintiff, Defendant Kellom and others visited Plaintiff's cell to tell him they were going to file a false disciplinary report against him. (Id.) Specifically, they told Plaintiff the report would say that camera footage of the incident showed Plaintiff was trying to escape his cell by tampering with the locks. (Id.) However, nothing in the purportedly false disciplinary report discussed that Plaintiff had been stabbed by J.J. (Id. at 3.) Indeed, Plaintiff contends no report about J.J. stabbing Plaintiff exists. (Id.)

Based on the above events, Plaintiff claims "[Defendant] Kellom [and others] [are] trying to have Plaintiff [] killed or/and is trying to kill Plaintiff [] by these inmates mentioned above." (Id.) For relief, Plaintiff asks the Court to order Defendant Kellom to produce the footage of the September 30th incident. (Id.) The title of his motion also shows he seeks greater protection and a transfer. (Id. at 1.)

In light of the current protective order, (doc. no. 57), the Court directed Defendant to respond to Plaintiff's filing, (doc. no. 64). Defendant timely responded. (Doc. no. 68.) Defendant argues the relief Plaintiff seeks is not tailored to the claim in this case, and Plaintiff has not satisfied the four elements to show he is entitled to preliminary injunctive relief. (See doc. no. 68.)

## II.  DISCUSSION

A party moving for injunctive relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly

3

establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983)).

Supplementing the elements listed above, the Prison Litigation Reform Act ("PLRA") places additional restrictions on preliminary injunctions in the prisoner civil rights context. While the PLRA permits preliminary injunctive relief "to the extent otherwise authorized by law," it requires the relief "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." Id.

With regard to what relief the Court may grant, Plaintiff has not met his burden of persuasion as to all four of the requirements, as supplemented by the PLRA requirements. The Court need not address the first factor, concerning substantial likelihood of success on the merits, because Plaintiff clearly fails to satisfy the remaining three elements. Failure to satisfy any one of the four prerequisites for injunctive relief is fatal to Plaintiff's request for injunctive relief. See Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (*per curiam*).

As to the second element, Plaintiff fails to demonstrate irreparable injury in the absence of an injunction. In order to satisfy the irreparable injury requirement, Plaintiff must show the threat of injury is "neither remote nor speculative, but actual and imminent." Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (citation omitted); see also Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (noting that, in order to obtain injunctive relief, a plaintiff must show "a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury."). Here, Plaintiff's

motion describes a single attack occurring on September 30, 2025, and his later efforts to notify various prison officials about the attack. (See generally doc. no. 53.) Although he discusses a lack of immediate medical attention, (id. at 1), he also states a doctor saw him and scheduled him for an x-ray, (id. at 2). Plaintiff then summarily concludes Defendant and others are trying to kill him, or have other inmates try to kill him. (Id. at 3.) Based on the facts presented regarding a single attack, this assertion is too speculative. Further, Plaintiff does not allege any ongoing issues beyond this conclusory statement that Defendant and others are trying to kill him. In other words, even though he discusses one prior act of violence against him, he provides no details demonstrating a present threat to his safety. Conclusory and vague assertions will not suffice. Thus, he fails to satisfy his burden of persuasion for the irreparable harm element.

As to the third and fourth elements, Plaintiff also failed to address whether any threatened injury to him outweighs damage the proposed injunction may cause the opposing party and whether if issued, the injunction would be adverse to the public interest. The law is well-settled that federal courts should refrain from unwarranted interference in the day-to-day operations of prisons. See Bell v. Wolfish, 441 U.S. 520, 547 (1979). Therefore, Plaintiff fails to establish he is entitled to the relief he seeks, and his motion should thus be denied.

Because the Court recommends Plaintiff's motion be denied because he fails to meet his burden of persuasion as to the elements required to obtain injunctive relief, the Court need not address Defendant's argument that the relief Plaintiff seeks is not tailored to the claims in this case. (Doc. no. 68, p. 4.)

### III.   CONCLUSION

In sum, Plaintiff has failed to satisfy the required elements for obtaining injunctive relief. Thus, the Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for injunctive relief be

**DENIED**.  (Doc. no. 53.)

SO REPORTED and RECOMMENDED this 22nd day of December, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA